**Darryl L. DURRETT, Plaintiff,**

v.

**LEADING EDGE PRODUCTS, INC., and Gateway 2000, Inc., Defendants.**

**No. 3:94CV1892(DJS).**

United States District Court,
D. Connecticut.

March 26, 1997.

Richard L. Gross, Cantor Floman Russell & Gross, Orange, CT, Matthew Shafner, Thomas W. Teixeira, II, O'Brien, Shafner, Stuart, Kelly & Morris, Groton, CT, for plaintiff.

Paul E. Pollock, Edward P. Brady, III, Bai, Pollock & Coyne, Bridgeport, CT, Kenneth G. Williams, Gordon, Muir & Foley, Hartford, CT, for defendant.

SQUATRITO, District Judge.

Upon review and pursuant to 28 U.S.C. § 636(b)(1)(B), and Rule 2 of the Local Rules for United States Magistrates (D.Conn.1994), this recommended ruling is APPROVED and ADOPTED as the ruling of this Court. Accordingly, Defendant Gateway's Motion for Summary Judgment (Doc. No. 44) is DENIED, Defendant Leading Edge's Motion for Summary Judgment (Doc. No. 52) is GRANTED, and Defendant Leading Edge's Motion to Dismiss (Doc. No. 52½) is DENIED as MOOT. It is ordered.

### RECOMMENDED RULING ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

MARTINEZ, United States Magistrate Judge.

This action involves products liability claims for repetitive stress injuries the plaintiff allegedly sustained as a result of using the defendants' keyboard equipment. Pending before the court are motions for summary judgment filed by both defendants, Leading Edge Products, Inc. ("Leading Edge") and Gateway 2000, Inc. ("Gateway"), and a motion to dismiss filed by the defendant Leading Edge. For the reasons set forth below, the motion for summary judgment filed by Gateway (doc. # 44) should be denied and the motion for summary judgment filed by Leading Edge (doc. # 52) should be granted. In addition, Leading Edge's motion to dismiss (doc. # 52½) should be denied.

The court will first review the undisputed facts that are relevant to the defendants' motions for summary judgment. The court will address the motions for summary judgment and then turn to Leading Edge's motion to dismiss.

## I. UNDISPUTED FACTS

Based on the evidentiary submissions, Local Rule 9 statements, and the memoranda of the parties,[1] the court finds the following facts to be undisputed.

The plaintiff first sought medical treatment for wrist pain on November 17, 1990,

---

1. In deciding each of the two motions for summary judgment, the court is not required to consider evidence submitted in connection with one motion separately from evidence submitted in connection with the other motion. The court may consider and rely on any or all appropriate grounds disclosed by any or all papers of record in the case. *See Palmer v. Palmer,* 31 F.Supp. 861 (D.Conn.1940). See also *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir. 1992); *Schneider v. TRW, Inc.,* 938 F.2d 986, 1002 (9th Cir.1991); *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930 (1st Cir.1983).

and was diagnosed with tenosynovitis [2] on November 19, 1991. On January 10, 1992, the plaintiff learned that his injuries were possibly caused by his use of keyboard equipment in the course of his employment.[3] In January of 1992, the plaintiff filed a claim with the state Workmen's Compensation Commission in which he identified the date of his injury as November 20, 1990. The diagnosis of carpal tunnel syndrome [4] was first made on March 8, 1994.

The plaintiff filed his complaint in this action in the United States District Court for the District of Connecticut on November 9, 1994.

After filing the complaint, the plaintiff sent it to the defendant Gateway in South Dakota by certified mail, return receipt requested. The return receipt card was signed by Kevin Barkus, a Gateway employee, on November 18, 1994. As of November 18, 1994, Kevin Barkus worked in Gateway's mail room. He was not an officer, director, cashier, teller or managing agent of Gateway. Gateway concedes that it was served with the summons and complaint on November 23, 1994, when those documents were received by Gateway's senior staff counsel, Gretchen Hoover. Gateway filed its appearance and answer in this action in December of 1994.

The plaintiff also sent the complaint by certified mail, return receipt requested, to the defendant Leading Edge in Massachusetts. The return receipt card was signed and dated November 22, 1994. Leading Edge answered the complaint on January 26, 1995. In its answer, Leading Edge asserted that personal jurisdiction was lacking due to insufficient service of process and that the

action was barred by the statute of limitations.

## II.  THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### A.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities against the moving party. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (Feinberg, C.J.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Accordingly, the court must view the facts and the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B.  DISCUSSION

Gateway and Leading Edge have both moved for summary judgment on the ground that this product liability action alleging repetitive stress injuries is barred by the applicable statute of limitations which provides that "[n]o product liability claim ... shall be

---

2. Tenosynovitis is defined as "[i]nflammation of a tendon sheath caused by calcium deposits, repeated strain or trauma, high levels of blood cholesterol, rheumatoid arthritis, gout, or gonorrhea." *Mosby's Medical, Nursing & Allied Health Dictionary*, (Kenneth N. Anderson et al. eds., 4th edition, 1994).

3. In his opposition papers, the plaintiff contends that he first learned of the alleged causal relationship between his work and his injury on January 10, 1992. This fact was not disputed. The issue of whether the plaintiff should have known, through the exercise of reasonable care,

of any causal relationship at an earlier date has not been addressed by the parties.

4. Carpal tunnel syndrome is defined as "a common painful disorder of the wrist and hand, induced by compression of the median nerve between the inelastic carpal ligament and other structures within the carpal tunnel ... Symptoms may result from trauma, synovitis, or tumor, or may develop with rheumatoid arthritis, amyloidosis, acromegaly, or diabetes." *Mosby's Medical, Nursing & Allied Health Dictionary* (Kenneth N. Anderson et al. eds., 4th edition, 1994).

brought but within three years from the date when the injury, death or property damage is first sustained or discovered." Conn. Gen. Stat. § 52–577a(a). Applying the standard for summary judgment to the defendants' statute of limitations arguments, the defendants' motions for summary judgment may be granted only if there exists no genuine issue of fact as to whether the plaintiff brought this action more than three years from the date that he first sustained or discovered his injury.

### 1. *The Date When the Injury was First Sustained or Discovered.*

The parties disagree on the date when the plaintiff's injury was first sustained or discovered. Leading Edge contends that the plaintiff's injury was discovered in November 1990, when the plaintiff first sought medical treatment for the pain he was experiencing in his wrist. Gateway contends that the plaintiff's injury was discovered on or before November 19, 1991, the date when he was diagnosed as suffering from tenosynovitis. The plaintiff does not dispute that he sought medical treatment for his wrist pain in November 1990, or that he was diagnosed with tenosynovitis on November 19, 1991. The plaintiff contends, however, that he did not discover his injury, within the meaning of the statute, until January 10, 1992, when he first learned of the causal relationship between his use of keyboard equipment and his tenosynovitis. The parties' disagreement on this issue stems from their different interpretations of the term "injury" as that term is employed in Connecticut General Statutes § 52–577a. The court must therefore construe the term "injury" as it is used in that statute.

In addition, the plaintiff contends that a new limitations period for his product liability claim was triggered when he was diagnosed with carpal tunnel syndrome because his injury of carpal tunnel syndrome is separate and distinct from his injury of tenosynovitis.

### a. The Definition of "Injury" In Connecticut General Statutes § 52–577a

The plaintiff argues that the term "injury" in § 52–577a should be construed to mean "legal injury" or "actionable harm." Under this definition, the limitations period would not begin to run until the plaintiff has or should have discovered all the essential elements of the cause of action, including the causal connection between the defendant's conduct and the plaintiff's injury.

The defendants contend that the term "injury" should be construed to mean "physical injury." Under this definition, Gateway contends that the limitations period for the plaintiff's claim began to run when his injury was diagnosed, while Leading Edge contends that the limitations period began to run when the plaintiff first experienced pain or physical symptoms of the injury. The difference between the defendants' positions is merely the extent to which the plaintiff's physical injury must be discovered to trigger the limitations period, that is, whether the plaintiff's personal discovery of physical symptoms of the injury is sufficient or whether an expert diagnosis of the injury is required. Despite this difference, the defendants nevertheless agree that it is the discovery of physical injury that triggers the limitations period. The defendants both argue that the discovery of legal injury or actionable harm—which would include the discovery of the causal connection between the defendant's conduct and the plaintiff's injury—is not required for the limitations period to begin to run. In support of their position, the defendants argue that the Connecticut Supreme Court's decision *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 150, 464 A.2d 18 (1983), is controlling authority on this issue. Leading Edge also offers a statutory construction analysis to support its argument that Connecticut decisions which have construed the term "injury" to mean "actionable harm" in the context of a different statute of limitations, Connecticut General Statutes § 52–584, should not be extended to Connecticut General Statutes § 52–577a. This court is not persuaded.

### (i) *Beckenstein v. Potter & Carrier, Inc.*

The defendants argue that the Connecticut Supreme Court's decision in *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 150, 464 A.2d 18 (1983), is controlling precedent on

the issue before this court, namely, whether the limitations period for a product liability claim begins to run upon the discovery of physical injury or upon the discovery of actionable harm. A careful review of the *Beckenstein* decision reveals that contrary to the defendants' view, the Connecticut Supreme Court did not decide this question.

*Beckenstein* involved a products liability claim for damages caused by a defective roof. *Id.* at 151, 464 A.2d 18. As early as 1969, the plaintiffs discovered that their roof had not been installed properly. *Id.* at 154, 162, 464 A.2d 18. In 1974, the plaintiffs learned that the "main problem" with the roof was that insulation underneath the roofing materials had not properly adhered to the steel frame of the building. *Id.* at 155, 162, 464 A.2d 18. The plaintiffs did not file suit against the defendants until 1975. *Id.* at 151, 464 A.2d 18. The trial judge found that the product liability claim was barred by the three-year statute of limitations and directed a verdict for the defendants on that count. *Id.* at 160, 464 A.2d 18. On appeal, the plaintiffs contended that the statute of limitations did not bar their claim because they had not known the "main problem" of the roof's failure until 1974. Rejecting this argument, the court stated, "[t]he problem with this argument is that the statute refers to the 'date when the injury was first sustained,' not the date when the cause of the injury was first determined." *Id.* at 162, 464 A.2d 18.

Based on this language from *Beckenstein*, the defendants contend that the court held that the limitations period set forth in § 52–577a(a) begins on the date that the physical injury is first discovered or sustained, regardless of whether the causal connection between the defendant's conduct and the plaintiff's injury—an essential element of actionable harm—has been or should have been discovered. The defendants' contention, however, is not supported by the facts of the *Beckenstein* case, as the plaintiffs in that case knew as early as 1969 that their injuries were caused by the improper installation of the roof by the defendants. The *Beckenstein*

court was therefore not presented with, nor did it decide, the issue of whether the limitations period begins to run before the plaintiff discovers or should discover the causal connection between the defendant's conduct and the plaintiff's injury. The *Beckenstein* court simply held that the precise reason for the injury need not be discovered before the statute begins to run.

This court's interpretation of the *Beckenstein* case is supported by the caselaw on which the Connecticut Supreme Court relied in reaching that decision. *E.g., Grand Island School District v. Celotex Corporation,* 203 Neb. 559, 568, 279 N.W.2d 603 (1979) (although suit was filed within one month of engineering consultant's identification of the exact problems that caused roof to leak, action was nevertheless barred by statute of limitations because plaintiff did not bring suit against defendants who installed roof within two years of discovering that roof leaked and that roofing materials had been applied carelessly); *Friends University v. W.R. Grace & Co.,* 227 Kan. 559, 564–65, 608 P.2d 936 (1980) (plaintiff's failure to know the exact nature of the roof's defect did not toll the commencement of the statute of limitations where it was apparent that there was a severe problem with the roof caused by defective design, materials or workmanship almost immediately after the roof had been installed).

Based on the foregoing analysis, this court concludes that *Beckenstein* is not dispositive of the issue that is presently before this court. This court must therefore look to other Connecticut caselaw to decide whether it is the discovery of physical injury or actionable harm that triggers the running of the limitations period in a product liability action.

### (ii) "Injury" as "Actionable Harm"

The parties recognize that in negligence actions brought under Connecticut General Statutes § 52–584, "injury" means "actionable harm" for statute of limitations purposes.[5] *Catz v. Rubenstein,* 201 Conn.

---

5. Connecticut General Statutes § 52–584 provides, in pertinent part:

No action to recover damages for injury to the person, or to real or personal property, caused by negligence ... shall be brought within two

39, 43–44, 513 A.2d 98 (1986); *Burns v. Hartford Hospital,* 192 Conn. 451, 458, 472 A.2d 1257 (1984) ("an injury occurs when a party suffers some form of actionable harm."). Actionable harm that would constitute an "injury" under Connecticut General Statutes § 52–584 "occurs when the plaintiff discovers or should discover, in the exercise of reasonable care, that he or she has been injured *and that the defendant's conduct caused such injury." Catz v. Rubenstein,* 201 Conn. 39, 44, 513 A.2d 98 (1986) (emphasis added). "By equating 'injury' with 'actionable harm' the Supreme Court of Connecticut has indicated that the two-year limitation of § 52–584 starts to run when the plaintiff discovers both that he has suffered physical harm and the causal connection between that harm and the alleged negligent conduct of the defendant." *Hamilton v. Smith,* 773 F.2d 461, 464 (2d Cir.1985).

Notwithstanding the Connecticut courts' construction of the term "injury" in § 52–584, the defendants argue that the same term should have a different meaning in § 52–577a. The Second Circuit has decided this issue adversely to the defendants. In *BellSouth Telecommunications v. W.R. Grace,* 77 F.3d 603, 610–11 (2d Cir.1996), when predicting how the Connecticut Supreme Court would determine when a product liability claim accrued under § 52–577a, the Second Circuit Court of Appeals *expressly* followed Connecticut decisions construing § 52–584 to hold that a product liability claim accrues when the plaintiff discovers, or should discover, actionable harm caused by the defendant's product. *Id.* at 611. Absent Connecticut Supreme Court authority to the contrary, this court is bound to follow the Second Circuit's prediction of how the Connecticut Supreme Court would construe § 52–577a and must hold that "injury," as that term is used in the statute, means actionable harm and occurs when the plaintiff discovers or should discover, in the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury. *Id.* Accord *Gnazzo v. G.D. Searle & Co.,* 973 F.2d 136, 138 (2d

Cir.1992) (product liability claim accrues "when the plaintiff discovers or should discover, through the use of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury") (quoting *Champagne v. Raybestos–Manhattan,* 212 Conn. 509, 521, 562 A.2d 1100 (1989)); *Einhorn v. American Telephone and Telegraph Co.,* 1996 WL 684399 (D.Conn.1996) (plaintiff's cause of action barred by Conn. Gen.Stat. § 52–577a(a) where plaintiff was aware of her carpal tunnel condition and that the condition was related to her use of keyboard equipment at her job more than three years before filing suit); *West Haven School Dist. v. Owens–Corning Fiberglas,* 721 F.Supp. 1547, 1556 (D.Conn.1988) (plaintiff "must have known that there was a causal connection between the conduct and the injury" in order for its product liability claim to have accrued).

In this case, the undisputed facts show that the plaintiff did not learn of the causal connection between his use of the defendants' keyboard equipment and his injury of tenosynovitis until January 10, 1992. It was only then that the plaintiff discovered his legal injury, or actionable harm, and the three year limitations period was triggered.

### b. The Diagnosis of Carpal Tunnel Syndrome

■ In opposing Leading Edge's motion for summary judgment, the plaintiff argues that his carpal tunnel syndrome injury is separate and distinct from his tenosynovitis injury and, therefore, that a new limitations period for a product liability claim based on his injury of carpal tunnel syndrome was triggered when he was diagnosed with carpal tunnel syndrome on March 8, 1994. This court does not agree.

The plaintiff concedes that he sustained both conditions, tenosynovitis and carpal tunnel syndrome, "as a result of repetitive stress injury (RSI) from using automated drafting computers with keyboards." *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment dated September 27, 1996, at 1. Because the plaintiff's carpal tunnel syn-

years from the date when the injury is first sustained or discovered or in the exercise of

reasonable care should have been discovered. . . .

drome arose from the same conditions that caused his tenosynovitis, the carpal tunnel syndrome is merely a continuation of the tenosynovitis. *Einhorn v. American Telephone & Telegraph Co.* 1996 WL 684399 (D.Conn.1996) (Nevas, J.) (plaintiff's left carpal tunnel syndrome was merely continuation of right-hand condition where both conditions were caused by the same instrumentality); *Parajecki v. IBM*, 899 F.Supp. 1050, 1055–57 (E.D.N.Y.1995) (although plaintiff's right trigger finger syndrome was diagnosed within limitations period accruing from date of injury, that condition was nevertheless barred because it arose from the same conditions causing her tendinitis and bilateral carpal tunnel syndrome, which were sustained outside the limitations period). *See also Burns v. Hartford Hospital*, 192 Conn. 451, 458, 472 A.2d 1257 (1984) (statute of limitations began to run when leg first became noticeably infected, not when infection later developed into permanent scarring).

Thus, the three-year limitations period for the plaintiff's claim for carpal tunnel syndrome began to run at the same time as his claim for tenosynovitis, specifically, January 10, 1992. As the district court stated in *Einhorn*, "[t]o hold otherwise would be to recognize that the duration of the time of injury for limitations purposes may be extended by continuous and further aggravating use of a product known to be injurious." *Einhorn*, 1996 WL 684399 at *3.

### 2. The Commencement of the Action Against the Defendants

Because the undisputed facts show that the plaintiff's injury was discovered on January 10, 1992, the defendants' motions for summary judgment may be granted only if there exists no genuine issue of fact that the plaintiff commenced suit within three years of that date, on or before January 10, 1995. *See* Conn. Gen.Stat. § 52–577a(a). The court must now determine the dates on which this action was brought against each of the defendants.

As this is a diversity action arising under Connecticut law, Connecticut state law governs the manner in which the action is to be considered commenced for purposes of the state statute of limitations. *Converse v. Gen-*

*eral Motors Corp.*, 893 F.2d 513, 515–16 (2d Cir.1990) (construing Conn. Gen.Stat. § 52–577a). Under Connecticut law, "the time when the action is regarded as having been brought is the date of service of the writ upon the defendant." *Id.*, quoting *Consolidated Motor Lines, Inc. v. M & M Transp. Co.*, 128 Conn. 107, 20 A.2d 621, 622 (1941). The question, therefore, is when service of the writ was made upon the defendants Gateway and Leading Edge.

#### a. Service Upon Gateway

The plaintiff mailed the writ to both of the defendants by certified mail, return receipt requested. Gateway concedes that it was served with the complaint on November 23, 1994. Because service on November 23, 1994 is within the three year limitations period that began on January 10, 1992, Gateway's motion for summary judgment must be denied.

#### b. Service Upon Leading Edge

Leading Edge contends that it was never properly served with process in this action and that this action was therefore not brought prior to the expiration of the limitations period.

While state law controls the manner in which an action is to be considered commenced, it is federal law that determines the proper method of serving process. *Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1302, 1303 (2d Cir.), cert. denied, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 116 (1990).

In this case, the plaintiff attempted to serve Leading Edge by mailing the summons and complaint to Leading Edge on November 14, 1994. Pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, a plaintiff may obtain a waiver of service by mail by sending the complaint plus a notice and request for waiver of service to the defendant by first class mail. If the defendant returns the requested waiver within 30 days, the plaintiff is to file the waiver with the court. The action would then proceed as if the summons and complaint had been served on

the defendant at the time of the filing of the waiver. Fed.R.Civ.P. 4(d).[6]

The plaintiff in this action failed to include a waiver form with the copy of the summons and complaint that he mailed to Leading Edge. This omission was fatal to the plaintiff's attempted service pursuant to Rule 4. *McGann v. State of New York*, 77 F.3d 672 (2d Cir.1996). In *McGann*, the *pro se* plaintiff attempted to serve the defendant by mail but failed to include an acknowledgement of service form with the summons and complaint. *Id.* at 674. The Second Circuit Court of Appeals held that the failure to include an acknowledgement of service form rendered the attempted service ineffective. *Id.* at 675.

Applying *McGann* to the facts of this case, it is clear that the plaintiff's mailing of the summons and complaint did not constitute proper service. Because Leading Edge was not properly served with process within the limitations period, the action against Leading Edge is barred by the applicable statute of limitations, Conn. Gen.Stat. § 52–577a(a). The court therefore recommends that Leading Edge's motion for summary judgment be granted.

## III. LEADING EDGE'S MOTION TO DISMISS

In light of the court's recommended ruling on Leading Edge's Motion for Summary Judgment, Leading Edge's motion to dismiss is rendered moot. The court therefore recommends that the motion to dismiss be denied.

## IV. CONCLUSION

Based on the foregoing, the court recommends that the motion for summary judgment filed by the defendant Gateway (doc. # 44) be denied; that the motion for summary judgment filed by the defendant Leading Edge (doc. # 52) be granted; and that the motion to dismiss filed by the defendant Leading Edge (doc. # 52½) be denied.

6. In its brief, the plaintiff contends that it effected "service by mail and acknowledgement" pursuant to Rule 4(c)(2)(C)(ii) as of November 1994. However, as Leading Edge correctly points out,

Any party may seek the district judge's review of this recommendation. See 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) and 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objection to magistrate judge's recommended ruling waives any further review of the ruling).

Rule 4 had been amended in 1993. It is Rule 4(d) that governs the service attempted by the plaintiff in November of 1994.